IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| ANTWAN CREIGHTON, | |
| Plaintiff, | CIVIL ACTION NO.: 6:18-cv-42 |
| v. | |
| DENA SMITH; and IRIS THOMPSON, in their individual capacities, | |
| Defendants. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This action is before the Court on Plaintiff's Motions to Amend, docs. 22, 28, and Defendants' Motions to Dismiss, docs. 18, 25. For the following reasons, the Court **GRANTS** Plaintiff's May 23, 2019 Motion to Amend, doc. 28, and **GRANTS in part** and **DENIES in part** Plaintiff's April 17, 2019 Motion to Amend, doc. 22. Additionally, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss, docs. 18, 25, **DISMISS** Plaintiff's Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Finally, I **DENY as moot** Plaintiff's Motion for Default Judgment, doc. 17, and Plaintiff's Motion for Copies, doc. 15.

### BACKGROUND

Plaintiff asserts an access to court claim arising from his attempt to appeal his underlying criminal conviction by filing a notice of appeal with the Superior Court of Fulton County. Doc. 1 at 3–4; Doc. 1-1 at 5–8; Doc. 28-1 at 2–9. Plaintiff contends Defendants delayed mailing his notice of appeal, preventing him from timely filing that notice and causing the Court of Appeals of Georgia to initially reject his appeal as untimely. Doc. 1; Doc. 28-1 at 2–9.

After the Fulton County Superior Court denied his motion for a new trial, Plaintiff had until November 7, 2016 to file a notice of appeal with that court. Doc. 1 at 3–4; Doc. 1-1 at 8. On November 2, 2016, Plaintiff submitted an envelope addressed to the Fulton Superior Court and containing his notice of appeal to prison authorities for postage. Doc.1 at 4; Doc. 1-1 at 9, 13. Plaintiff's notice of appeal was mailed and postmarked—but not until November 15, 2016. Doc. 1 at 10–11, 15–16; Doc. 1-1 at 15–16, 40. The Fulton Superior Court received and filed Plaintiff's notice of appeal on November 22, 2016. Doc. 1 at 6; Doc. 1-1 at 15, 31–32. On January 6, 2017, the Georgia Court of Appeals dismissed Plaintiff's appeal as untimely. Doc. 1 at 5; Doc. 1-1 at 15–16; Doc. 28-1 at 4. Plaintiff unsuccessfully appealed this decision with the Georgia Court of Appeals and the Georgia Supreme Court. Doc. 1-1 at 18–26. On May 19, 2017, Plaintiff filed a motion for an out-of-time appeal with the Fulton County Superior Court. Doc. 1 at 6; Doc. 1-1 at 28–38, 60–61; Doc. 28-1 at 9. The superior court granted that motion on October 26, 2017. Doc. 1 at 6; Doc. 1-1 at 28–38, 60–61; Doc. 28-1 at 9.

Plaintiff alleges that Defendants Smith and Thompson violated his constitutional right to access the courts by deliberately, intentionally, or negligently weighing his mail incorrectly and, consequentially, failing to attach the correct amount of postage, and by holding Plaintiff's mail for an additional 10 to 11 days after its return from the post office before adding a stamp and resending it. Doc. 1 at 3–9; Doc. 28-1 at 2–4, 6–8. Plaintiff contends that his notice of appeal was not postmarked until November 15, 2016 (approximately 13 days after he submitted it to prison authorities for mailing), that Defendants Smith and Thompson are responsible for this delay, and that this delay caused the Court of Appeals to dismiss his appeal as untimely. Doc. 1-1 at 15–16, 26, 67; Doc. 28-1 at 2–9. Plaintiff argues Defendant Thompson initially weighed Plaintiff's mail incorrectly and Defendant Smith did not apply the correct amount of postage.

Doc. 1 at 7–8; Doc. 28-1 at 2, 6.  Additionally, Plaintiff argues Defendants violated his constitutional rights by holding Plaintiff's mail for an additional "10 to 11 days" after the post office rejected it for insufficient postage.  Doc. 1 at 10–11; Doc. 1-1 at 40; Doc. 28-1 at 2.  Defendants argue they are entitled to qualified immunity and, because the Fulton County Superior Court subsequently granted Plaintiff's motion to file an out-of-time appeal, Plaintiff fails to show an actual injury.  Docs. 18, 25.

It is helpful to explain the precise timeline of the events that gave rise to Plaintiff's action.  After Plaintiff was tried and convicted in the Fulton Superior Court, he filed a pro se motion for new trial, which the Fulton Superior Court denied on October 7, 2016.  Doc. 1 at 3; Doc. 1-1 at 5–8.  In order to preserve his right to appeal, Georgia law required Plaintiff file a notice of appeal with the superior court by November 7, 2016.  Doc. 1 at 3–4; O.C.G.A. § 5-6-38(a).  On or around November 2, 2016, Plaintiff filled out the indigent postage form at Smith State Prison and submitted it along with two envelopes, one addressed to the Fulton County Superior Court which contained his notice of appeal, and one addressed to the Georgia Court of Appeals which contained a brief setting forth grounds for his appeal. Doc. 1 at 4.  He placed both envelopes "inside the black mailbox . . . labeled 'indigent mail.'"  Doc. 1 at 4.  On November 3, 2016, Plaintiff received (through the prison's "institutional mail") a copy of the indigent postage form which showed the amount of postage used on each envelope and the total cost.  Doc. 1 at 4; Doc. 1-1 at 9.  The Georgia Court of Appeals received Plaintiff's brief on November 7, 2016, but the Fulton County Superior Court did not receive Plaintiff's notice of appeal until November 22, 2016—twenty days after Plaintiff initially submitted it to prison authorities for delivery.  Doc. 1 at 6; Doc. 1-1 at 15, 31–32.

3

Plaintiff alleges that, as a result of insufficient postage, the post office returned the notice of appeal to Smith State Prison officials the day after it was mailed—on or around November 3, 2016—after which Defendants improperly held it for approximately 10 to 11 days before affixing the correct amount of postage and resending the letter on November 15, 2016.  Doc. 1 at 7–12; Doc. 1-1 at 9, 40; Doc. 28-1 at 2–9.

Plaintiff contends Defendants "deliberately and intentionally" delayed mailing Plaintiff's notice of appeal for these additional 10 to 11 days after the post office returned the notice for insufficient postage.  Doc. 1 at 6–8; Doc. 28-1 at 2–9.  According to Plaintiff, "Defendant Thompson picked up the mail from the post office on November 3, 2016," and she received Plaintiff's rejected letter at that time.  Doc. 1 at 2–3, 8.  Plaintiff bases this belief on his conversation with Defendant Thompson about her duties as a mailroom officer and a conversation between his wife and Mr. Chase Lamb, the postmaster at the post office used by Smith State Prison.  Doc. 1 at 7–8; Doc. 1-1 at 5–7.  Defendant Thompson told Plaintiff her duties include weighing large envelopes containing indigent legal mail and reporting the weight and number of stamps needed to the business office.  Doc. 1 at 7–8.  She is also responsible for dropping off and picking up mail from the post office, sorting the incoming mail, and passing out and picking up legal mail from inmates.  Id.  Plaintiff writes Defendant Thompson told him that "this is an every day [sic] process."  Id.  Mr. Lamb told Plaintiff's wife that post office policy "does not allow" the post office to "hold mail that does not have the correct amount of postage on it."  Id.  Rather, mail with insufficient postage is sent "back the very next day."  Id.  Based on this information, Plaintiff alleges Defendant Thompson received his rejected letter on or around November 3, 2016, when she picked up the mail from the post office.  Id.  Regardless, it is clear

that the envelope containing Plaintiff's notice of appeal was not postmarked until November 15, 2016.[1]  Id.; Doc. 1-1 at 6–8, 40; Doc. 28-1 at 6.

On January 6, 2017, the Georgia Court of Appeals dismissed Plaintiff's appeal as untimely.  Doc. 1 at 5; Doc. 1-1 at 15–16.  Plaintiff appealed to the Georgia Supreme Court, and the Georgia Supreme Court affirmed the dismissal of his appeal on the same grounds on April 17, 2017.  Doc. 1-1 at 26.  On May 19, 2017, Plaintiff filed a motion for an out-of-time appeal with the Fulton Superior Court.[2]  Doc. 1 at 6.  On October 26, 2017, the Fulton Superior Court determined the delay "was not attributable to [Plaintiff]," granted Plaintiff's motion, appointed counsel, and permitted him to file an out-of-time notice of appeal within 30 days of that order.[3]  Doc. 1-1 at 60–61.  However, Plaintiff's counsel failed to file the out-of-time notice of appeal within the time provided.  Doc. 18-1 at 3; Doc. 18-2 at 3.  There is no indication from Plaintiff's filings as to what, if any, efforts were made to pursue the appeal after the entry of the superior court's written order.

Plaintiff filed this action on April 11, 2018 while incarcerated at Smith State Prison in Glennville, Georgia.[4]  Doc. 1.  Plaintiff submitted a Supplemental Complaint on September 27,

---

[1] Plaintiff eventually obtained a copy of the original envelope containing his notice of appeal from the Fulton County Superior Court.  Doc. 1 at 6; Doc. 1-1 at 40, 44–49.  The envelope bears a stamp (crossed out at some point by someone) reading "Postage Due" and has a November 15, 2016 postmark date.  Doc. 1-1 at 40.

[2] On July 12, 2017, Plaintiff requested the Fulton Superior Court provide him a copy of the original envelope containing his notice of appeal.  Doc. 1 at 6; Doc. 1-1 at 40.  Plaintiff then supplemented his motion for an out-of-time appeal.  Doc. 1 at 6; Doc. 1-1 at 40.

[3] The Superior Court appointed attorney Brandon Lewis to assist Plaintiff in filing the out-of-time appeal.  Doc. 10-1 at 7.  However, for reasons unknown to this Court, no appeal was filed.  Id. at 7; Doc. 18-1 at 7; Doc. 18-2 at 3.

[4] Plaintiff filed Grievance Number 247403 regarding the "facts relating to []his Complaint" on July 12, 2017.  Doc. 1 at 9; Doc. 1-1 at 50–52, 62.  The warden denied Plaintiff's grievance on September 18, 2017, and Plaintiff appealed to the Central Office the same day.  Doc. 1 at 9–10; Doc. 1-1 at 50–52.  Plaintiff received the Central Office's denial of his grievance on December 18, 2017.  Doc. 1 at 9–10;

2018.  Doc. 10; Doc. 12 at 1 n.1.  On January 28, 2019, this Court found that Plaintiff asserted a non-frivolous constitutional claim and ordered the United States Marshals perfect service upon Defendants Smith and Thompson.  Doc. 12 at 1–2.  Defendants filed a Motion to Dismiss, doc. 18, on April 1, 2019, and Plaintiff submitted a timely Response on April 17, 2019.  Doc. 20.  Along with his Response, Plaintiff also filed a motion for leave to amend, doc. 22, and attached his proposed Amended Complaint, doc. 22-1.[5]  On May 2, 2019, Defendants filed a new Motion to Dismiss, doc. 25, to address Plaintiff's proposed Amended Complaint, doc. 22-1.  Plaintiff again requested leave of Court to amend, doc. 28, and submitted a second proposed Amended Complaint, doc. 28-1, on May 23, 2019.  Defendants objected.  Doc. 29.

In their Motions to Dismiss, docs. 18, 25, Defendants assert three main arguments.  First, Defendants argue Plaintiff failed to state a claim because he "suffered no actual injury as his appeal was not ultimately precluded, but merely delayed."  Doc. 18-1 at 3–9; Doc. 25-1 at 1–2.  Second, Defendants argue that even if Plaintiff demonstrated some injury, under 42 U.S.C. § 1997e(e), he cannot obtain compensatory or punitive damages unless there is a *physical* injury.  Doc. 18-1 at 9–10; Doc. 25-1 at 1–2.  Finally, Defendants aver that, because weighing, stamping, and posting mail are discretionary acts, and because Defendants did not commit a constitutional

---

Doc. 1-1 at 62.  The Central Office denied Plaintiff's grievance because the "review revealed that, according to staff involved, no mail that was sent out by you was returned to the facility due to a postage error."  Doc. 1-1 at 62.  Plaintiff alleges the Central Office's reply indicates "absolutely no investigation [was] conducted" regarding his grievance.  Doc. 1 at 9–10; Doc. 1-1 at 40, 62.  However, because "a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure," allegations that prison officials failed to properly investigate a grievance or "that prison officials failed to comply with the prison's voluntary grievance procedures" do not, by themselves, "state a due process claim."  Thomas v. Warner, 237 F. App'x 435, 437–38 (11th Cir. 2007).

5        Additionally, Plaintiff filed a motion for injunctive relief, doc. 13, a motion for copies and court documents, doc. 15, and a motion for default judgment, doc. 17.

6

violation or act against clearly established law, they are protected by qualified immunity. Doc. 18-1 at 10–12; Doc. 25-1 at 1–2.

## DISCUSSION

**I.     Plaintiff's Proposed Amended Complaints, Docs. 22-1, 28-1**

A plaintiff may amend a complaint once "as a matter of course" within 21 days of serving the complaint or 21 days after a responsive pleading is filed. Fed. R. Civ. P. 15(a). If the party has already amended the complaint once or if 21 days have passed, a contested amendment may only be filed with leave of court.[6] Id. Leave to amend should be "freely" given "when justice so requires." Id. The Rules, therefore, skew in favor of permitting amendment. Foman v. Davis, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."); Halliburton & Assocs., Inc. v. Henderson, Few & Co., 774 F.2d 441, 443 (11th Cir. 1985); Duncan v. Marion Cty. Sheriff's Dep't, No. 5:03-cv-416, 2005 WL 8159841, at *2 (M.D. Fla. May 26, 2005); Senger Bros. Nursery v. E.I. Dupont de Nemours & Co., 184 F.R.D. 674, 678 (M.D. Fla. 1999). While courts may freely grant leave to amend, courts may deny a timely request based on bad faith, undue delay, failure to fix deficiencies despite prior leave to amend, undue prejudice to opposing party, or futility. Foman, 371 U.S. at 182; Halliburton, 774 F.2d at 443; Mumby v. Sec'y, Dep't of Corr., No. 216-CV-312, 2017 WL 6534937, at *2 (M.D. Fla. Dec. 20, 2017).

---

[6]     After Defendants filed their first Motion to Dismiss, doc. 18, the Court issued an Order to inform Plaintiff that if he failed to respond to Defendants' Motion within 21 days "the Court will presume Plaintiff does not oppose the Motion and may dismiss individual claims or the entire action." Doc. 19 at 2. The Court also noted that Plaintiff may "choose to amend his Complaint to cure deficiencies noted in the Motion to Dismiss," but "because Plaintiff has previously filed a supplemental complaint in this case and Defendants have filed a responsive pleading, Plaintiff must first file a motion for leave to amend before filing another amended complaint." Id. at 2–3. Plaintiff filed a timely request to amend and proposed Amended Complaint on April 17, 2019. Docs. 22, 22-1. Thus, both Plaintiff's proposed Amended Complaints, docs. 22-1, 28-1, are evaluated under Rule 15(a)(2) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(a)(2).

Plaintiff's proposed Amended Complaint, doc. 22-1, and his second proposed Amended Complaint, doc. 28-1, are similar to his original Complaint, doc. 1, as supplemented, docs. 9, 10, 10-1, 12. However, there are two differences. First, in both proposed Amended Complaints, Plaintiff seeks to increase the amount of compensatory and punitive damages he requests against Defendants from $1,500 to $100,000 and from $50,000 to $125,000.[7] Doc. 1 at 14; Doc. 22-1 at 6–7; Doc. 28-1 at 9–10. Second, in Plaintiff's first proposed Amended Complaint, Plaintiff desires to add a state law negligence claim and a claim against Defendants for acting in violation of 18 U.S.C. § 242. Doc. 22-1 at 2–3, 4. Importantly, in his Motion requesting leave to file his second proposed Amended Complaint, Plaintiff requests the Court "dismiss" his first proposed Amended Complaint "[b]ecause of the improper addings [sic] of state tort law, and 18 U.S.C. § 242."[8] Doc. 28 at 2.

Because Plaintiff withdrew his attempt to add state law claims and § 242 claims—the only substantive change contained in his April 17, 2019 Motion—the Court **DENIES in part** Plaintiff's April 17, 2019 Motion to Amend, doc. 22, as to these two claims but **GRANTS in part** Plaintiff's April 17, 2019 Motion to the extent Plaintiff has included factual allegations in the Motion. The Court **GRANTS** Plaintiff's May 23, 2019 Motion to Amend, doc. 28.[9]

---

[7] Plaintiff continues to request a declaratory judgment, court costs, and all other necessary equitable relief. Doc. 1 at 14; Doc. 22-1 at 6–7.

[8] Plaintiff also requests the Court refrain from dismissing any attachments or exhibits. Doc. 28 at 2. Because Plaintiff did not attach any exhibits or attachments to his first proposed Amended Complaint, the Court interprets this statement as a request to continue to incorporate the exhibits attached to his other pleadings into his May 23, 2019 proposed Amended Complaint. Id. at 2; see Doc. 22.

[9] The Court deems Plaintiff's Complaint amended as of the filing of this Order and Report and Recommendation. See Carter v. Church, 791 F. Supp. 297, 298 (M.D. Ga. 1992) (noting that Rule 15(a) typically "require[s] that an amended complaint be filed after leave to amend is granted, unless the court specifically rules otherwise by including in its order language to the effect that the complaint is deemed amended"). In his Amended Complaint, Plaintiff "realleges and incorporate[s] by reference" all facts in his original Complaint. Doc. 28 at 2; Doc. 28-1 at 1; see Schreane v. Middlebrooks, 522 F. App'x 845, 847 (11th Cir. 2013) ("As a general rule, an amended complaint supersedes and replaces the original

8

## II.     Plaintiff's Access-to-Courts Claim

Defendants argue the Court should dismiss Plaintiff's access-to-courts claim because they are entitled to qualified immunity.  Doc. 18-1 at 10–12; Doc. 25 at 2.  First, Defendants assert Plaintiff failed to establish a constitutional violation because Plaintiff did not suffer an actual injury.  Doc. 18-1 at 11; Doc. 25 at 2.  Essentially, Defendants argue no actual injury exists when the actions of prison officials initially impede or hinder the prisoner's access to courts but that violation is later remedied by the prisoner or the courts.  Doc. 18-1 at 4–9.  Defendants assert there is no actual injury if, despite the challenged conduct, there is still "effective vindication" of the right the plaintiff seeks.  Id.  In Defendants' view, because Plaintiff subsequently petitioned for and received permission to file an out-of-time appeal in state superior court, Plaintiff suffered no actual injury from Defendants' delay in applying the correct postage to his legal mail and the consequential missed filing deadline and dismissal of his appeal.  Id.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Al-Amin v. Smith, 511 F.3d 1317, 1324 (11th Cir. 2008) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)); Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002); see also Harlow v. Fitzgerald,

---

complaint unless the amendment specifically refers to or adopts the earlier pleading." (quoting Varnes v. Local 91, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982))); see also Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and [should], therefore, be liberally construed." (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))).  Thus, the Court concludes Plaintiff's most recent Amended Complaint, doc. 28-1, construed liberally, incorporates by reference both the factual allegations contained in his original Complaint and attachments, docs. 1, 1-1, as well as his supplemental Complaint and attachments, docs. 9, 10, 10-1.  The Court, therefore, considers Documents 1, 1-1, 9, 10, 10-1, 22-1, and 28-1 to constitute Plaintiff's Complaint in this action and has considered all factual allegations contained in these filings when ruling on Defendants' Motions to Dismiss.  In ruling on Defendants' Motions to Dismiss, the Court has considered the facts alleged in all of these pleadings.  See Karaba v. DSI Sec. Servs., No. 2:16-cv-664, 2017 WL 6349796, at *2 n.3 (M.D. Fla. Aug. 7, 2017) (construing all "pleadings and exhibits together" when ruling on a motion to dismiss filed against a pro se plaintiff).

457 U.S. 800, 818 (1982). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation[.]" Lee, 284 F.3d at 1194.

This defense "reflects an effort to balance 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Jones v. Fransen, 857 F.3d 843, 850–51 (11th Cir. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate 'clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" Id. at 851 (quoting Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). "As a result, qualified immunity shields from liability 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Id. (quoting Lee, 284 F.3d at 1194).

### A. Discretionary Authority

To receive qualified immunity, government officials must first establish that they were acting within their discretionary authority during the events in question. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). Discretionary authority includes all actions of a governmental official that "(1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Dang ex rel. Dang v. Sheriff, Seminole Cty., 871 F.3d 1272, 1279 (11th Cir. 2017) (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)).

Here, Defendants Smith and Thompson, as prison officials responsible for handling inmate mail, acted within their discretionary authority while processing Plaintiff's letter to the Fulton County Superior Court.

### B.     Constitutional Violation

Because Defendants acted within the scope of their discretionary authority, the burden shifts to Plaintiff to show that Defendants are not entitled to qualified immunity.  Dang, 871 F.3d at 1279 (quoting Lee, 284 F.3d at 1194); Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).  To make this showing, Plaintiff must "prove that the facts alleged, construed in the light most favorable to it, establish that a constitutional violation did occur."  Shaw v. City of Selma, 884 F.3d 1093, 1099 (11th Cir. 2018) (citing Smith v. LePage, 834 F.3d 1285, 1291 (11th Cir. 2016)); Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013); see also Saucier v. Katz, 533 U.S. 194, 200 (2001).[10]  Because an "'actual injury' is a constitutional prerequisite to an inmate's access-to-courts claim," if Plaintiff cannot show an actual injury, Defendants are entitled to qualified immunity.  See Al-Amin, 511 F.3d at 1332.

"[P]risoners have a constitutional right of access to the courts."[11]  Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977)).  Prison officials must ensure incarcerated individuals have "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  Lewis v. Casey, 518 U.S. at 351 (1996) (quoting Bounds, 430 U.S. at 823).  "As a necessary corollary to this right, the states must permit the prisoner meaningful access to the postal system as this is typically the only manner in which a prisoner may communicate with the court."  Gramegna v. Johnson, 846 F.2d

---

[10]     Courts may exercise their discretion to choose the order to analyze the "constitutional violation" and "clearly established right" prongs on the qualified immunity analysis.  Williams v. Russo, 636 F. App'x 527, 532 (11th Cir. 2016) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

[11]     Though the right to access the court is well-established, opinions differ as to the particular constitutional provision from which the right arises.  Christopher v. Harbury, 536 U.S. 403, 415 & n.12 (2002).  Courts "have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and . . . Due Process Clauses."  Id. (citations omitted).

675, 677 (11th Cir. 1988); see also Cunningham v. Dist. Attorney's Office for Escambia Cty., 592 F.3d 1237, 1271 (11th Cir. 2010) (noting that access must be "adequate, effective, and meaningful" (quoting Bounds, 430 U.S. at 821)). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). "There are two types of legal mail: (1) 'privileged' or 'attorney mail;' and (2) 'court mail,' which is 'correspondence between an inmate and a state or federal judge, clerk's office, or other courthouse address.'" Smith v. Humphrey, No. 5:12-cv-15, 2014 WL 810915, at *6 (M.D. Ga. Feb. 28, 2014) (quoting Al-Amin, 511 F.3d at 1329 n.25).

Plaintiff contends that Defendants Smith and Thompson unconstitutionally delayed his outgoing legal mail (a notice of appeal of his underlying criminal conviction addressed to the Fulton County Superior Court), and thus, caused the Georgia Court of Appeals to reject his appeal as untimely. Defendants allege Plaintiff cannot show an actual injury because he sought and obtained a remedy for the harm caused by the mail delay in state court, and the ultimate preclusion of his appeal occurred for reasons unrelated to Defendants' conduct. Docs. 18, 22.

Access to courts claims are "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002). The claims are intended to "to provide vindication for a separate and distinct right to seek judicial relief." Harrison v. United States, 577 F. App'x 911, 912–13 (11th Cir. 2014) (quoting Barbour, 471 F.3d at 1226). Accordingly, to have standing to bring an access to courts claim, the prisoner-plaintiff must show the actions of prison officials "actually injured" his ability to bring a non-frivolous appeal of a criminal conviction, a habeas petition, or a civil rights

suit.[12] Lewis, 518 U.S. at 346; see also Christopher, 536 U.S. at 415; Al-Amin, 511 F.3d at 1332; Wilson v. Blankenship, 163 F.3d 1284, 1290 & n.10 (11th Cir. 1998) ("[P]rison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action."); see also Lewis, 518 U.S. at 351. "The injury requirement means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts." Cunningham, 592 F.3d at 1271. "To prevail, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, . . . that results from actions of prison officials." Miller v. Donald, 132 F. App'x 270, 272 (11th Cir. 2005) (citing Wilson, 163 F.3d at 1290–91).

In Lewis, the Supreme Court explained that an incarcerated individual could demonstrate that prison officials "hindered his efforts to pursue a legal claim," by "show[ing], for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known." Lewis, 518 U.S. at 351; see also Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998) ("The injury which the inmate must demonstrate is an injury to the right asserted, i.e.[,] the right of access."); Johnson v. Holt, No. 5:14-cv-380, 2016 WL 11248527, at *4 (M.D. Ga. Nov. 1, 2016) ("In order to allege a constitutional violation based on a denial of access to the courts, Plaintiff must show actual harm or prejudice to that right."); Smith v. Price, No. 3:11-cv-1581,

---

[12] Plaintiff's access-to-courts claim relates to his attempts to appeal his underlying criminal conviction. Docs. 1, 28. Defendants do not argue Plaintiff failed to show his appeal was non-frivolous. Docs. 18, 25; see Doc. 10-1 at 1–31 (containing arguments attacking jury instructions and asserting ineffective assistance of counsel); Barbour v. Haley, 471 F.3d 1222, 1226 (11th Cir. 2006) (finding inmates sufficiently alleged a non-frivolous claim when the "complaint identified three forms of post conviction relief"—ineffective assistance of counsel, jury misconduct, and violations of Brady v. Maryland, 373 U.S. 83 (1963)—because the complaint provided "some evidence of potentially arguable postconviction claims").

13

2012 WL 6541008 (M.D. Pa. Nov. 21, 2012) ("First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim.").

While a missed filing deadline may sometimes constitute actual injury, a missed filing deadline caused by delayed mail is not an actual injury when the claim is later decided on entirely different grounds.  Daker v. Warren, 660 F. App'x 737, 741 (11th Cir. 2016) (dismissing an access-to-courts claim when plaintiff failed to "explain[] how the outcomes of disputed matters would have been different" but for the challenged conduct); McCauley v. Georgia, 466 F. App'x 832, 837 (11th Cir. 2012) (affirming a finding of no actual injury in a non-prisoner context when the plaintiff "did not explain how the alleged deficiencies affected her case" and that plaintiff was still "able to file both a motion for summary judgment and a motion for reconsideration in that case" and to "have her case heard on the merits"); Asad v. Crosby, 158 F. App'x 166, 166 (11th Cir. 2005) (finding no injury from the confiscation of legal materials when plaintiff was still "able to pursue[] his action without any adverse consequences as evidenced by the filing of an amended complaint, a second amended complaint, and now this appeal"); Owens v. Christian, No. 5:17-cv-190, 2018 WL 6005426, at *2 (M.D. Ga. Nov. 15, 2018) (finding plaintiff failed to show actual injury when he claimed prison officials held his legal mail for several days, delaying submission of timely objections to a report and recommendation, when the court still "considered the late objection . . . and addressed the concerns contained in it").

Plaintiff argues Defendants caused his appeal to be rejected as untimely by incorrectly posting, holding, and delaying the delivery of his legal mail, thereby creating an actual injury. Doc. 28-1 at 1–9.  However, Defendants' actions only temporarily prevented Plaintiff from filing a notice of appeal; Plaintiff continued to litigate and subsequently won the right to file an out-of-

14

time appeal.  See Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1267 (11th Cir. 2012) (denying an access-to-courts claim when "the State's 'out-of-court refusal to release evidence for DNA testing in no way prevent[ed Alvarez] from asking a state court to order release of that evidence'" (quoting Cunningham, 592 F.3d at 1272)); Grier v. Office of the Pub. Def., No. 1:07-cv-3132, 2008 WL 821586, at *4 (N.D. Ga. Mar. 25, 2008) (finding no actual injury based on the opening of plaintiff-prisoner's legal mail and the confiscation of certain legal materials when plaintiff "was actually able to file a notice of appeal").  Plaintiff's opportunity to appeal his criminal conviction was merely delayed, and the Fulton Superior Court remedied any harm that had occurred when it permitted Plaintiff to file an out-of-time appeal.

Here, Plaintiff ultimately lost his right to appeal for a different, unrelated reason.  Doc. 18-2 at 2–4 (noting no "an out-of-time notice of appeal" was filed with the Court of Appeals within 30 days of the Superior Court's October 26, 2017 order).  Thus, Defendants' actions did not preclude Plaintiff from appealing his conviction nor prevent the Court from addressing Plaintiff's legal arguments.  See Humphrey, 2014 WL 810915, at *8 ("[C]ausation and intent are both essential elements of Plaintiff's court-mail claim."); Stephen v. Bennett, No. 2:09-cv-185, 2011 WL 1540341, at *3 (S.D. Ga. Mar. 7, 2011) (dismissing plaintiff's access to courts claim when plaintiff failed to show an actual injury "resulted from *[d]efendants' actions*" (emphasis in original)).  Plaintiff cannot show Defendants' actions caused him any prejudice in his criminal appeal because Defendants' actions did not cause the unfavorable disposition of Plaintiff's appeal; Plaintiff's failure to pursue his out-of-time appeal after permission was granted caused the unfavorable disposition.

Additionally, Plaintiff fails to show a constitutional violation because his pleadings do not support a plausible inference that Defendants' actions constitute anything more than mere

negligence. While the Eleventh Circuit has not yet addressed this issue, many other Circuits have concluded that access-to-courts claims only arise from conduct constituting more than mere negligence. See Johnson, 2016 WL 11248527, at *3; see also Simpkins v. Bruce, 406 F.3d 1239 (10th Cir. 2005); Snyder v. Nolen, 380 F.3d 279, 291 n.11 (7th Cir. 2004) ("[A]n allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts.").

For example, in Simpkins v. Bruce, a case discussed by both Plaintiff and Defendants, the Tenth Circuit Court of Appeals held that access-to-courts claims require plaintiffs "allege intentional conduct interfering with his legal mail, [but] do[] not require an additional showing of malicious motive." 406 F.3d at 1242; see Doc. 28-1 at 6–7; Doc. 29 at 2; Doc. 30 at 3. "Deliberate delay in the delivery of inmate legal mail is sufficient to satisfy the intent requirement for a right-of-access claim." Simpkins, 406 F.3d at 1242 n.3. The Simpkins court noted that, "[b]y contrast, when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs." Id. at 1242; Johnson, 2016 WL 11248527, at *4, *7 ("Generally, the loss of inmate mail, without more, will not sustain a Section 1983 access to courts claim."); Bishop v. McLaughlin, 5:11-cv-107, 2012 WL 1029499 at *7 (M.D. Ga. Mar. 26, 2012) ("Plaintiff must allege facts to show intentional conduct by a prison official and an actual injury in the pursuit of the Plaintiff's non-frivolous case.").

In Simpkins, the prison mail room supervisor held the plaintiff's mail for around a year after Plaintiff's transfer to an out-of-state prison based on her belief that the prison's policy required she forward mail only to inmates transferred to in-state facilities. 406 F.3d at 1242–43. The court found this intentional choice to hold the mail sufficient to support the plaintiff's

16

access-to-courts claim because it "[r]eflect[ed] a course of conduct deliberately undertaken" rather than one of "negligent omission or inadvertence." Id. at 1242.

Here, however, Plaintiff fails to show that Defendants' actions amounted to anything more than simple negligence. Plaintiff alleges only that the post office returned the improperly posted letter to the prison on November 3, 2016, and that Defendant Thompson picked up Plaintiff's rejected letter from the post office that day, along with the other mail addressed to the prison. In contrast to the deliberate course of conduct in Simpkins, Plaintiff does not plead any facts which would show that either Defendant made a conscious choice to incorrectly weigh or post his mail or to refrain from resending his letter (with the correct postage) for 10 to 11 days. Thus, Plaintiff fails to show the delay resulted from anything more than "negligent omission or inadvertence" on behalf of Defendants, and it is his burden to do so. See Humphrey, 2014 WL 810915 at *9 (granting a motion for summary judgment where the plaintiff "failed to show that the [d]efendants intentionally delayed his court mail"); Keaton v. Martin, No. 7:04-cv-55, 2007 WL 841949, at *1 (M.D. Ga. Mar. 20, 2007) (dismissing plaintiff's access to courts claim when he gave three letters to a prison official and one letter "was found, undelivered, in a different dorm" in the prison because "[a]t best, a jury could find that [d]efendant negligently failed to post his mail as she was required to do").

In sum, Plaintiff did not suffer an actual injury because he was permitted to file an out-of-time appeal. And, even if Plaintiff could show an actual injury, Plaintiff cannot show Defendants' actions caused him any prejudice in his criminal appeal because Defendants' actions did not cause the unfavorable disposition of that appeal; rather, Defendants demonstrate Plaintiff failed to pursue his out-of-time appeal after permission was granted. Additionally, Plaintiff has not plausibly shown Defendants' actions constituted anything more mere negligence, and an

access-to-courts claim can only arise from something more than mere negligence. I, therefore, **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss, docs. 18, 25, and **DISMISS** Plaintiff's Complaint.

In reaching its conclusion, the Court does not ignore the frustration Plaintiff experienced in pursuing his right to appeal. The Supreme Court has long recognized that a "*pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise," and that "[n]o matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped 'filed' on time." Houston v. Lack, 487 U.S. 266, 271, (1988) (emphasis in original). Indeed, while the Georgia courts do not recognize any "prison mailbox rule" based on delivery of a notice of appeal to prison authorities, the Georgia Supreme Court does require any order dismissing a criminal defendant's appeal "for failure to file a timely notice of appeal" must make that defendant "aware of the option of applying for an out-of-time appeal in the court of conviction." Rowland v. State, 452 S.E.2d 756, 759–60 (Ga. 1995) ("A criminal defendant who has lost his right to appellate review of his conviction due to error of counsel is entitled to an out-of-time appeal."); see also McCroskey v. State, 660 S.E.2d 735, 736 (Ga. Ct. App. 2008) (holding that Georgia's "prison mailbox rule applies only to habeas petitions, however, not to direct appeals"). This is precisely what happened in Plaintiff's case—the Georgia Court of Appeals informed him of his right to pursue an out-of-time appeal, and Plaintiff diligently did so and obtained the right which he now argues Defendants, through their actions, denied him. Doc. 1-1 at 15–16, 59–61. While the prison's handling of Plaintiff's legal mail was potentially negligent, the Court is only empowered to address conduct that rises to the level of a constitutional violation. The actions grieved by Plaintiff simply do not rise to that level.

**CONCLUSION**

For the above-stated reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's April 17, 2019 Motion to Amend, doc. 22. The Court **GRANTS** Plaintiff's May 23, 2019 Motion to Amend, doc. 28. I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, docs. 18, 25, **DISMISS** Plaintiff's Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Finally, I **DENY as moot** Plaintiff's Motion for Default Judgment, doc. 17, and Plaintiff's Motion for Copies, doc. 15.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 7th day of August, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA